UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTAR ROWE,

          Plaintiff,

v.

JP MORGAN CHASE BANK, N.A.,

          Defendant.

**Case No. 2:23-cv-1704**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth P. Deavers**

---

ANTAR ROWE,

          Plaintiff,

v.

JP MORGAN CHASE BANK, N.A.,

          Defendant.

**Case No. 2:23-cv-3703**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

    This matter is before the Court on Defendant JP Morgan Chase Bank N.A.'s Motion to Compel Arbitration and Stay Proceedings. ("First Action," Case No. 2:23-cv-1704, ECF No. 5.) JP Morgan seeks an order from the Court compelling *pro se* Plaintiff Antar Rowe to arbitrate his claims. (*Id.*) Mr. Rowe would prefer to litigate the claims instead. (ECF No. 8.)

    After JP Morgan moved to compel arbitration, Mr. Rowe filed a second, related case ("Second Action," Case No. 2:23-cv-3703). JP Morgan moved to consolidate both cases *(id.,* ECF No. 5) and the Court granted that Motion *(id.*, ECF No. 10). The Court construes the Motion to Compel Arbitration as applying to both cases as consolidated pursuant to JP Morgan's argument and incorporation of its Motion to Compel in its Motion to Consolidate. (Second Action, ECF No. 5, PageID 393, 396.)

1

For the reasons below, the Motion (ECF No. 5) is **GRANTED,** and the consolidated cases are **DISMISSED without prejudice.**

I. BACKGROUND

In September 2015, Mr. Rowe received an offer of employment from JP Morgan which included an Arbitration Agreement. (First Action, ECF No. 3, ¶ 3.) Mr. Rowe signed that Arbitration Agreement and began his employment with JP Morgan soon after. (*Id*.; *see also* ECF No. 5-3, PageID 78–79.) Mr. Rowe quit in January 2023. (*Id*., ECF No. 3., ¶ 11.)

A. **Mr. Rowe filed two Complaints against JP Morgan in state court.**

Mr. Rowe filed two Complaints against JP Morgan in the Franklin County Court of Common Pleas. In Mr. Rowe's first Complaint, he alleged that his Seventh Amendment right to a trial by jury was violated when JP Morgan forced him to sign the Arbitration Agreement. (First Action, ECF No. 3, ¶¶ 12, 14–18.) During his employment with JP Morgan, Mr. Rowe claims to have witnessed criminal activities including "currency manipulation" and "data fabrication," among other instances of misconduct. (*Id.,* ¶ 6–9.) Mr. Rowe also brings claims of discrimination and harassment. (*Id.*, ¶ 14.) JP Morgan subsequently removed the First Action to this Court. (*Id.*, ECF No. 2, PageID 35–37.)

Mr. Rowe's Complaint in the Second Action mirrors his Complaint in the First Action, but raises other tort claims of conspiracy, assault, negligence, and trespass to chattels. (Second Action, ECF No. 2.) The Court ordered that the First and Second Actions be consolidated. (*Id.*, ECF No. 10.)

B. **JP Morgan moved to compel arbitration pursuant to the Arbitration Agreement signed by Mr. Rowe.**

JP Morgan filed its Motion to Compel Arbitration pursuant to the Arbitration Agreement. (First Action, ECF No. 5, PageID 63.) The Court construes JP Morgan to have moved to compel

2

arbitration in both cases as consolidated. (Second Action, ECF No. 5, PageID 393, 396.) The Court construes it as such because JP Morgan attached the Motion to Compel to the Motion to Consolidate (*id.*, ECF No. 5, PageID 416) and reasoned that Mr. Rowe's claims in both actions are subject to the Arbitration Agreement and will be resolved by the Court's ruling on that Motion. (*Id.*, ECF No. 5, PageID 396.)

To support its Motion, JP Morgan attached a declaration from Molly Harr, the Executive Director – Human Resources Business Advisor, which stated that Mr. Rowe electronically signed and accepted an offer of employment which included a binding Arbitration Agreement. (First Action, Harr Decl., ECF No. 5-1, PageID 68.) JP Morgan attaches Mr. Rowe's employment offer, which includes Mr. Rowe's signature acknowledging and agreeing to the Arbitration Agreement:

> Signature: *Antar Rowe*  Date: 28-Sep-2015
> I understand my employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration, as set forth in the Binding Arbitration Agreement detailed below. By signing below I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of my employment with JPMorgan Chase.

(*Id.*, ECF No. 5-3, PageID 78.) JP Morgan argues that Mr. Rowe agreed to be bound to the Arbitration Agreement as a condition of his employment. (*Id.*, ECF No. 5, PageID 63.)

Under the Arbitration Agreement, all "Covered Claims" must be submitted to and resolved by a final and binding arbitration panel. (*Id.*, ECF No. 5-3, PageID 79.) Covered Claims include all "legally protected employment-related claims" against JP Morgan "which arise out of or relate to [Mr. Rowe's] employment or separation from employment with JP Morgan." (*Id.*)

II. ANALYSIS

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

3

revocation of any contract" 9 U.S.C. § 2. The FAA empowers federal courts to rigorously enforce arbitration agreements and to compel arbitration when a party to a dispute has refused to arbitrate. *See* 9 U.S.C. §§ 3–4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). But before compelling arbitration, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citation omitted). Any doubts are to be resolved in favor arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983); *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 840 (S.D. Ohio 2021). Like any other contract, arbitration agreements "may be unenforceable based on any of the 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Walker,* 541 F. Supp. 3d at 840 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011))

Courts reviewing motions to compel arbitration treat the facts as if the court were ruling on a motion for summary judgment and construe all facts and reasonable inferences in a light most favorable to the non-moving party. *Jones v. U-Haul Co. of Mass. and Ohio, Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (Graham, J.) (citing *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003) (Rice, J.)).

A. Enforceability of the Arbitration Agreement

The first question when analyzing whether to compel arbitration is whether a valid agreement to arbitrate exists between the parties. *Javitch*, 315 F.3d at 627. General principles of

contract law are used to determine the validity of an arbitration agreement. *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996).

Mr. Rowe argues that the Arbitration Agreement is unenforceable because it violates his Seventh Amendment right to a trial by jury. (First Action, Opp., PageID 92.) The Seventh Amendment however preserves "only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 506 (6th Cir. 2004) (citations omitted). In other words, "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *Id.* (quoting *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001)).

In her declaration, Ms. Harr authenticated the Arbitration Agreement and Mr. Rowe's electronic acknowledgment and acceptance on September 28, 2015. (First Action, Harr Decl., PageID 67–68.) Courts in the Sixth Circuit have found that employee acknowledgements of arbitration agreements executed electronically are binding and enforceable. *E.g.*, *Nealey v. Heritage Oaks Mgmt. Enters. USA, LLC*, No. 2:18-cv-1759, 2020 U.S. Dist. LEXIS 85778, at *10 (S.D. Ohio May 15, 2020) (Morrison, J.).

Mr. Rowe's assent to the terms of the Arbitration Agreement is evidenced by his electronic signature. (First Action, ECF No. 5-3, PageID 78, 83.) His assent is also manifested by his continued employment with JP Morgan after he was informed that the Arbitration Agreement was a condition of his employment. *See Dantz v. Am. Apple Grp., LLC,* 123 F. App'x 702, 708 (6th Cir. 2005) ("Mutual assent is manifested by Dantz's continued employment after having been told explicitly that the arbitration agreement was a condition of her employment."). The

5

Court thus finds that Mr. Rowe's signature on the offer of employment and the arbitration clause created a valid and binding agreement to arbitrate.

### B. Scope of the Arbitration Agreement

Next, the Court must ask whether Mr. Rowe's claims fall within the scope of the Arbitration Agreement. *Javitch*, 315 F.3d at 628. Once the Court finds a binding arbitration agreement exists, as it did above, there is a presumption that any dispute is arbitrable. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Therefore, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986). Doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Mr. Rowe argues that the FAA does not apply to his employment contract. (First Action, Opp., PageID 92–93.) To support this argument, Mr. Rowe cites 9 U.S.C. § 1 which provides that the FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Mr. Rowe's contract of employment is not of the kind contemplated by the exclusion in 9 U.S.C. § 1 because JP Morgan is not engaged in maritime transactions. The Arbitration Agreement is broad—it applies to all "legally protected employment-related claims" against JP Morgan "which arise out of or relate to [Mr. Rowe's] employment or separation from employment with JP Morgan." (First Action, ECF No. 5-3, PageID 79.) Based on this language, the Court finds that Mr. Rowe's claims in both the First and Second Actions, which all relate to his employment with JP Morgan, fall squarely within the scope of the Arbitration Agreement.

### III. Dismiss or Stay Mr. Rowe's Claims

Having found that all of Mr. Rowe's claims must be submitted to arbitration, the Court must now determine whether to dismiss Mr. Rowe's Complaint or stay this matter pending arbitration. The FAA requires that a court, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Nealey*, 2020 U.S. Dist. LEXIS 85778, at *12. Nonetheless, most district courts in this Circuit agree that the best procedure when all remaining claims are arbitrable is to dismiss the action without prejudice. *See*, *e.g.*, *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (noting the Sixth Circuit rejected the argument that "9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them"); *Nealey,* 2020 U.S. Dist. LEXIS 85778, at *12 (finding no purpose for retaining jurisdiction and dismissing the complaint). Accordingly, the Court dismisses Mr. Rowe's Complaints without prejudice.

### IV. CONCLUSION

For the reasons above, JP Morgan's Motion to Compel Arbitration (First Action, Case No. 2:23-cv-1704, ECF No. 5) is **GRANTED,** and the Court **ORDERS** the parties to proceed to arbitration for a disposition of Mr. Rowe's claims in accordance with the Arbitration Agreement. Mr. Rowe's pending Motions for Status Conference (First Action, Case No. 2:23-cv-1704, ECF Nos. 22, 23) are **DENIED as MOOT.** The Clerk is **DIRECTED** to **CLOSE** both the First Action (Case No. 2:23-cv-1704) and the Second Action (Case No. 2:23-cv-3703) and **ENTER JUDGMENT DISMISSING both cases without prejudice**.

IT IS SO ORDERED.

| | |
|---|---|
| **1/4/2024** <br> **DATE** | **s/Edmund A. Sargus, Jr.** <br> **EDMUND A. SARGUS, JR.** <br> **UNITED STATES DISTRICT JUDGE** |